Filed 2/25/14  Jason G. v. Superior Court CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| JASON G., | B252097 |
| Petitioner, | (Super. Ct. No. CK92502) |
| v. | |
| THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, | |
| Respondent. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

Writ petition to review order setting hearing under Welfare and Institutions Code section 366.26.  Rudolph A. Diaz, Judge.  Petition denied.

Law Offices of Alex Iglesias, Steven Shenfeld and Sasha Minton for Petitioner.

No appearance for Respondent.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Jeanette Cauble, Senior Deputy County Counsel for Real Party in Interest Los Angeles County Department of Children and Family Services.

————————————————————

Petitioner Jason G. (Father) seeks extraordinary relief (Welf. & Inst. Code, § 366.26, subd. (*l*); [1] Cal. Rules of Court, rule 8.452) from the juvenile court's order setting a hearing pursuant to section 366.26 to consider termination of parental rights and implementation of permanent plans for his two dependent children, four-year-old J.G.-1 and two-year-old J.G.-2 (Children). Father contends the setting order resulted from ineffective assistance by his retained counsel. We deny the petition on the merits.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 15, 2011, the Los Angeles County Department of Children and Family Services (Department) filed a petition under section 300 to declare the Children and two half-siblings, 14-year-old Amanda M. and 13-year-old C.M.,[2] dependents of the juvenile court. As sustained by the juvenile court on March 22, 2012, the petition included allegations Father physically abused C.M. by choking her and striking her back, legs and buttocks with belts, making her stand in a corner for hours, and slapping and pinching her; physically abused Amanda by striking her with belts and slapping and pinching her; engaged in violent altercations with Mother in the presence of all of the children, including striking Mother and holding her down; left the children alone without adult supervision; allowed Amanda to administer medication to Father's three-year-old daughter Jalyn G., who suffered from seizures and cerebral palsy and who died while in the care of Amanda; and withheld food from Amanda and C.M., endangering the physical health and safety of Amanda, C.M. and the Children, and placing them at risk of physical harm, damage and danger. (§ 300, subd. (b).) Allegations of physical abuse on Amanda and C.M. were also sustained as to Father under subdivision (j) of section 300 (abuse of sibling).

---

[1]     Statutory references are to the Welfare and Institutions Code.

[2]     Neither the half siblings, nor their mother, Joann H. (Mother), are parties in this proceeding.

Proceeding to disposition, the juvenile court ordered Father to participate in conjoint counseling with Amanda and C.M. when deemed appropriate by the Department and in individual counseling to address case issues; attend parenting classes; and complete a full drug treatment program with random testing. Father's visits with the Children were ordered to be monitored. The court continued the matter to September 20, 2012 for the six-month-review hearing. (§366.21, subd. (e).)[3]

Father was represented by appointed counsel from the commencement of the case through the date of the jurisdiction and disposition hearings.

On July 11, 2012 the Department filed a subsequent petition (§ 342) as to Amanda, C.M. and the Children. The petition alleged, as to Father, that he sexually abused Amanda and C.M. With regard to Amanda the petition alleged Father fondled her vagina, masturbated in front of her, lacerated her vagina by placing a cucumber or a pickle in it, and instructed her to place a spoon in her vagina. With regard to C.M. the petition alleged Father instructed her to fondle her vagina in front of him and to place various objects in her vagina, forced her to view pornographic materials, and exposed his penis to her.

In its report for the detention hearing on the subsequent petition the Department indicated that, in May of 2012, Amanda disclosed specific details of Jason's sexual abuse to her foster mother, a foster sister, Amanda's caregiver, and two social workers. In an interview with a social worker C.M. disclosed that she too had been sexually abused by Father, and she provided details of the abuse.

On July 11, 2012, the date of the detention hearing on the subsequent petition, Father filed a Substitution of Attorney indicating that he had retained Steve Fox as his

---

[3] Father appealed from the juvenile court's jurisdictional and dispositional orders. This court affirmed the orders. (*In re Amanda M. et al.* (March 11, 2013, B240480) [nonpub. opn.].)

3

new attorney. The court ordered Amanda, C.M. and the Children to remain detained, and scheduled the adjudication hearing for September 21, 2012.**4**

In its jurisdiction and disposition report for the subsequent petition, submitted on July 31, 2012, the Department indicated that, in an interview with the social worker, Amanda discussed several occasions when she was sexually abused by Father. On each occasion Father masturbated in her presence. On two occasions Father instructed Amanda to masturbate. Once, Father pushed a pickle or a cucumber into Amanda's vagina, causing her to bleed. Another time, he instructed Amanda to insert a spoon into her vagina. Father told Amanda not to say anything to Mother or to C.M. about his conduct. Amanda was afraid of Father and said nothing to Mother or to C.M. Amanda stated the sexual abuse began when she was thirteen-and-a-half years old, and ended when she was placed in foster care at age 15. Amanda also told her therapist about the abuse, and the therapist told Amanda that C.M. had also been sexually abused by Father.

C.M. told the social worker that Father yelled at her, spanked her, and made her stand in a corner for hours. On one occasion Father played a movie on the television depicting teenagers having sex, and then another movie showing a girl masturbating with a dildo. C.M. stated that Father told her she had to learn how to masturbate.

On November 2, 2012 the Department filed a report for the six-month review hearing on the section 300 petition. The Department indicated that Amanda and C.M. were thriving in their separate foster care placements. Father had completed a parenting education program and was visiting the Children consistently. Father had discontinued counseling, stating that he could not afford the fees because he needed the funds to pay for his retained counsel. Between August of 2012 through October 4, 2012, Father had submitted two negative drug tests and missed two drug tests.

The adjudication hearing on the subsequent petition commenced on November 2, 2012. The court admitted the Department's reports into evidence, and attorney Fox announced that he intended to call Amanda and C.M. as witnesses. The court continued

---

**4**      Neither Father nor attorney Fox appeared at the hearing on July 11, 2012.

the hearing to December 7, 2012.  On that date the Department submitted a Last Minute Information report, indicating that C.M. had been psychiatrically hospitalized for three weeks commencing November 6, 2002, and again on December 4, 2012.  C.M. remained hospitalized.[5]  The court continued the adjudication hearing to February 1, 2013.

At the continued adjudication hearing on February 1, 2013 the juvenile court admitted several reports from the Department into evidence, and Amanda was called to testify in chambers.  Amanda testified to being sexually abused by Father at home, in the desert and in a park.[6]  She sometimes tried to use excuses to avoid the abuse, but felt unable to refuse Father's demands for fear of the consequences.  At the conclusion of Amanda's testimony the court continued the adjudication hearing to March 1, 2013.

On February 19, 2013, attorney Fox requested a continuance of the adjudication hearing on the subsequent petition to a date in July of 2013 or in the alternative a date in September of 2013, explaining that he had been elected to the State Assembly, and his new duties precluded him from appearing in court on other dates.  Mr. Fox failed to appear for the adjudication hearing on March 1, 2013.  The court found that the request for a continuance lacked proper notice, issued a bench warrant for Mr. Fox, and continued the matter to March 8, 2013.  On March 8, 2013 attorney Luat Cao appeared for Mr. Fox and requested a continuance to a date in July.  The juvenile court observed that Mother and Father would be running out of reunification time, denied the request, and continued the adjudication hearing to March 22, 2013.

On March 22, 2013 Father filed a Substitution of Attorney, substituting attorney Ilyse Klavir for Mr. Fox.  The court continued the adjudication hearing to April 30, 2013 to enable attorney Klavir to become familiar with the case.

---

[5]     The record indicates that C.M. had a history of cutting herself, she had expressed suicidal thoughts, and she was being treated for depression.

[6]     Amanda's testimony describing the sexual abuse was consistent with the description she had previously given to the social worker.

At the commencement of the continued adjudication hearing on April 30, 2013, counsel for C.M. explained that C.M. had refused to come to court. Counsel pointed out that C.M. had appeared on various occasions, only to be sent home because attorney Fox was not present. Counsel explained that C.M. was engaging in cutting behavior, had been psychiatrically hospitalized multiple times, and was unable to appear due to her precarious mental state.

Attorney Klavir then called Father to testify. Father denied each of the sexual abuse allegations as to Amanda and C.M. At the conclusion of Father's testimony attorney Klavir indicated she wished to cross-examine C.M. The court indicated it would put the matter over one last time to seek C.M.'s attendance, but added that it would not force C.M. to appear if it would be detrimental to her well-being. The court then continued the adjudication hearing to May 17, 2013.

C.M. did not appear for the continued adjudication hearing on May 17, 2013. C.M.'s counsel advised that C.M. had again been psychiatrically hospitalized on May 6, 2013 and had not been discharged. Counsel for the Department suggested that the court receive into evidence recorded copies of the forensic video of C.M.'s interview with the social worker for rebuttal of Father's testimony, but the court determined the interview was not required. Attorney Klavir called Mother to testify, but the court sustained an objection by C.M.'s counsel on the ground the testimony would be cumulative.

The court proceeded to hear argument. Counsel for the Department requested that the court sustain the sexual abuse allegations against Father, noting that both Amanda and C.M. described Father's sexual abuse in detail, their statements to several sources concerning the abuse as set forth in the Department's reports were specific and consistent, and each disclosed the abuse independently, unaware that the other had also been abused. The attorneys for Amanda, C.M. and the Children all joined in the Department's request the sexual abuse allegations against Father be sustained.

For Father, attorney Klavir noted Amanda did not report the alleged sexual abuse until 10 months after she first had contact with the social workers, the alleged abuse was

6

highly unusual, and it was doubtful C.M. could have been exposed to teenage pornography because it is illegal and impossible to find. Ms. Klavir added that Amanda and C.M. had a motive to make the abuse allegations: They did not want to return to their home because their sister had died there and the family was poor.

After hearing argument, the court announced its decision to sustain the allegations in the section 342 petition as to Father. The court explained that it had given the accusations by Amanda and C.M. careful scrutiny and found Amanda's testimony credible and persuasive, especially in the absence of any evidence suggesting she and C.M. collaborated in making their allegations.

Counsel for C.M. then noted that the case had reached the 18-month statutory limit for reunification (§ 366.22) as to the section 300 petition, and requested the court set a combined 18-month hearing on the section 300 petition and the disposition hearing on the section 342 petition. The court set a contested disposition hearing for June 14, 2013 and the 18-month hearing for July 18, 2013. On June 14, 2013 the court continued the contested disposition hearing to July 18, 2013 for receipt of reports by the Department.

On June 21, 2013 the Department submitted its report for the 18-month review hearing on the section 300 petition.[7] The Department advised that Amanda was thriving in her foster care placement, but C.M. had run away from her group home placement. The Children were placed with a paternal grandmother, who was doing an "amazing job" in caring for them, was very bonded with them, and wished to adopt them. Father had completed a parenting program, but had dropped out of individual counseling and a drug rehabilitation program, stating that he had to use his limited funds to pay his attorney. Father had tested negative for drugs 16 times and failed to appear for 11 other tests. The Department recommended the court terminate reunification for Father, assessing that the risk of re-abuse was very high if the Children were returned to his custody, and noting that Father had failed to complete his court-ordered programs.

---

[7] The Department did not submit a separate report for the disposition hearing on the section 342 petition.

The 18-month review hearing on the section 300 petition commenced on July 18, 2013. The court admitted into evidence the Department's latest report and its case service logs for the period from March 22, 2012 to June 5, 2013. Attorney Klavir then stated that she had not been served with those documents, and asked whether she was "supposed to know they're there and go and get them." Counsel for C.M. said that was correct, and Ms. Klavir replied, "Okay, just wondering." Ms. Klavir did not offer any evidence for the hearing, and the court proceeded to hear argument.

Counsel for the Department requested the court terminate reunification services for Father, noting that Father had received services for 20 months, hence the case had proceeded beyond the statutory limit for reunification, and Father was not in compliance with his case plan. The attorneys for Amanda, C.M. and the Children all joined in the Department's request. In her argument, Ms. Klavir initially urged Father had made efforts to comply with his case plan, but perhaps failed to benefit from the court-ordered programs because he was not living with the Children. After the court struck Ms. Klavir's statement that C.M. had "deteriorated into a horrible human being," Ms. Klavir announced that she felt unqualified to continue to represent Father and requested to withdraw as his counsel. Ms. Klavir stated that she lacked knowledge of how to obtain the appropriate paperwork, and added that she was unable to appear on a regular basis because she was searching for a job as an accountant. Father told the court he wished to substitute in new counsel.

The attorneys for Amanda, C.M. and the Children expressed concern that Ms. Klavir's belated indication that she was not qualified to represent Father may represent an attempt to obtain a mistrial, and suggested the court put the matter over and appoint new counsel for Father.

The court then terminated reunification services for Father as to Amanda and C.M.,[8] appointed new counsel for Father, and continued the 18-month review hearing as

---

[8]    The court set a selection and implementation hearing (§ 366.26) for November 14, 2013 as to Amanda and C.M.

to the Children to August 1, 2013 to afford new counsel an opportunity to prepare.

At the continued 18-month review hearing as to the Children on August 1, 2013, new counsel for Father requested additional time to file a motion to set aside the court's order of May 17, 2013 sustaining the section 342 petition on the ground attorney Klavir had provided ineffective assistance to Father. The court put the matter over to August 22, 2013 to enable the parties to brief this issue. On August 12, 2013 Father's counsel filed the motion to set aside, urging that the entire section 342 petition should be adjudicated anew, and that a new 18-month review hearing on the section 300 petition should be conducted, for Ms. Klavir's ineffective assistance. Briefs opposing Father's motion were thereafter filed by the Department and by C.M. On August 22, 2013 the court continued the matter to September 24, 2013. On that date the matter was continued to September 26, 2013.

At the commencement of the hearing on September 26, 2013 the court announced its decision to deny Father's motion to set aside prior orders. The court observed that attorney Fox had initially represented Father with regard to the adjudication of the section 342 petition and, at the time Ms. Klavir substituted in as counsel, the adjudication hearing was basically completed but for Father's testimony and closing arguments. The court further noted that, after the section 342 petition was sustained the 18-month review hearing was conducted, Ms. Klavir did not seek to be relieved until the attorneys were making closing arguments. The court determined that, under these circumstances, the outcome would not have been any different had Father been represented by an attorney other than Ms. Klavir.

The court then proceeded with the continued 18-month review hearing as to the Children, and afforded Father's new counsel an opportunity for argument. Counsel argued that the Department did not provide reasonable reunification services to Father and, because the court did not conduct a six-month review hearing (§ 366.21, subd. (e)) or a 12-month review hearing (§ 366.21, subd. (f)), Father was not afforded an opportunity to allege a lack of reasonable services.

9

Counsel for the Department then requested the court terminate reunification services for Father as to the Children, noting that Father received various referrals for parenting classes and counseling, but failed to follow through or to comply with the court's order for drug testing.

At the conclusion of argument the court announced its decision to terminate reunification services for Father as to the Children.[9] The court observed that Father had received reasonable services for 20 months, and he continued to disregard the court's orders. The court then set the matter for a hearing pursuant to section 366.26.

## DISCUSSION

We reject Father's contention the section 342 petition must be readjudicated, and a new 18-month review hearing on the section 300 petition should be conducted, for ineffective assistance of attorney Klavir.

A party's claim for relief based on ineffective assistance of counsel has two components. First, the party must show that counsel's performance was deficient. (*Strickland v. Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693]; *People v. Pope* (1979) 23 Cal.3d 412, 423-425.) Second, the party must also establish prejudice before he can obtain relief on an ineffective assistance claim. (*People v. Ledesma* (1987) 43 Cal.3d 171, 217.) "It is not enough for the [party] to show that the errors had some conceivable effect on the outcome of the proceeding. . . . ¶ The [party] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, at pp. 693-694; see *In re Cordero* (1988) 46 Cal.3d 161, 180.)

---

[9] The court neither considered nor made a disposition order on the section 342 petition.

Our Supreme Court has advised that, in considering a claim of ineffective assistance of counsel, "'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [party] as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" (*In re Fields* (1990) 51 Cal.3d 1063, 1079, quoting *Strickland*, *supra*, at pp. 668, 697.)

We follow that advice here, and conclude that it is not necessary for us to determine whether counsel's performance was deficient because Father has failed to prove prejudice under the *Strickland* standard.

First, we note that Father makes no attempt to demonstrate that he suffered prejudice from any deficient performance by counsel Klavir, but makes only the conclusory claim that "confidence in the trial process was harmed." Additionally, Ms. Klavir's participation in the case was brief. Father was represented by counsel whose effectiveness Father does not challenge during the major portion of 20-month pendency of the dependency proceedings, and the claim of defective performance is limited to Ms. Klavir's representation during the 18-month review hearing. Nor can Father demonstrate that any other outcome would have been possible under the facts of the case. The record, as we have set forth, shows that the evidence that Father sexually abused Amanda and C.M. was overwhelming. The evidence further established that Father failed to comply with his case plan. After 20 months of services he had not completed individual counseling, he had dropped out of his drug treatment program, and he had failed to appear for 13 of 39 drug tests. Under these circumstances Father cannot show there is a reasonable probability that, but for any unprofessional errors by attorney Klavir, the result of the dependency proceeding as to the Children would have been different.[10]

---

[10] Father also contends that, under the provisions of section 317, subdivision (a) and 317.5, subdivision (a), a parent in dependency proceedings is entitled to representation by competent counsel, and the court's failure in this case to make an inquiry of attorney

11

## DISPOSITION

The petition is denied on the merits.


WOODS, J.


We concur:


PERLUSS, P. J.


ZELON, J.

---

Klavir's ability to provide competent representation entitles him to relief. By their own terms however, the provisions of section 317 et seq. afford protection for indigent parents who require appointed counsel, and do not apply to an attorney who has been retained by a party.